HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
STEPHEN D. DEMIK (Bar No. 221167)
(E-Mail:  Stephen_Demik@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-5312
Facsimile:  (213) 894-0081

Attorneys for Defendant
RODRIGO FRANCO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. CR-17-00523-GW |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT RODRIGO FRANCO'S POSITION ON SENTENCING** |
| RODRIGO FRANCO, | Sentencing Date: January 22, 2018 |
| Defendant. | Sentencing Time: 8:00 a.m. |
| | Courtroom: 9D |

Defendant Rodrigo Franco, by and through his counsel of record, Deputy Federal Public Defender Stephen D. Demik, hereby submits his position regarding factors relevant to sentencing

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  January 17, 2018        By  */s/ STEPHEN D. DEMIK*
                                    STEPHEN D. DEMIK
                                    Deputy Federal Public Defender
                                    Attorney for RODRIGO FRANCO

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MR. FRANCO'S POSITION ON SENTENCING

### A. Response to Government's Sentencing Memorandum

This case attracted nation-wide attention.[1] Apparently, the United States Attorneys Office actively fed the media frenzy by providing photographs to the media and issuing statements regarding the case.[2] The government's sentencing memorandum is no less sensationalistic, arguing that "if someone had been bitten by one of the cobras, they likely would have died"[3], that Mr. Franco intentionally put his children in harm's way because the postal box was found in his children's room, that a prison term is necessary to "deter other defendants from engaging in similar behavior"[4] and, finally, that cobras "are protected because they are vulnerable to extinction"[5] and, therefore, Mr. Franco should be put in prison.

First, a study at the University of Adelaide apparently gave this snake a "general untreated fatality rate of 50—60%", meaning that only about half of *adult* king cobra bites involve nonfatal quantities of venom.[6] In another study, the fatality rate for untreated king cobra bites was 28%.[7] In the specific species in this case, in fact, the mortality rate for bites is 15%.[8] There is no dispute that the king cobra is a venomous snake, however, the government's sentencing memorandum assumes a deadliness that overstates the actual risk of danger in this case. Certainly there is a spectrum of dangerousness, and Mr. Franco asks the Court to take that into account in his case.

---

[1] *See* "L.A. man accused of smuggling king cobras in potato chip cans", found at https://www.reuters.com/article/us-usa-snake-smuggling/l-a-man-accused-of-smuggling-king-cobras-in-potato-chip-cans-idUSKBN1AB01R

[2] *Id.*

[3] Docket No. 24, p. 3, lns. 8-9.

[4] *Id.*, p. 9, lns. 14-15.

[5] *Id.*, p. 10, lns. 5-6.

[6] *See* "AnliKira," found at http://anlikira.blogspot.com/2016/01/king-cobra.html

[7] *See* "Cobra Envenomation," found at https://emedicine.medscape.com/article/771918-overview#showall

[8] *See* https://en.m.wikipedia.org/wiki/Chinese_cobra

2

Next, Mr. Franco is separated. His children do not always stay with him. However, the government's sentencing memorandum, including a photograph of where the package was found (presumably moments after it was delivered), would have the Court believe that his children were sleeping in the room. This is inaccurate. Mr. Franco would never put his children in harm's way, and he is a devoted father. He asks the Court to also take this into consideration.

With regards to deterrence, albeit a worthy and practical consideration, the government also overstates its importance here. As cited in the Department of Justice's web site press release on "Prosecution of Federal Wildlife Crimes," one case involving the transportation of protected snakes between Florida and Pennsylvania—*United States v. Robroy MacInnes*.[9] In that case, the defendants contested their guilt by way of a trial and there was evidence that they "attempted to persuade a witness not to provide the government with information regarding their illegal dealings."[10] After conviction, the court sentenced them to 18 months' incarceration and 12 months' incarceration. Here, Mr. Franco, although initially fearful and equivocal, ended up admitting his guilt and cooperating with the government in entering a plea agreement. He did not go to trial. He did not obstruct justice. However, the government's sentencing recommendation in this case is disproportionate in light of other similar cases that do not involve a jury trial or obstruction of justice allegations.

Finally, the king cobra species is "vulnerable to extinction" because of the destruction of their loss of habitat and exploitation for medicinal purposes, not due to any illegal trafficking.[11] Mr. Franco loves reptiles. It is his "second passion" next to his

---

[9] Found at https://www.justice.gov/enrd/prosecution-federal-wildlife-crimes
[10] *Id.*

[11] *See* "King cobra under threat, put on red list." Found at https://timesofindia.indiatimes.com/city/chennai/King-cobra-under-threat-put-on-red-list/articleshow/14571226.cms

3

family.[12] His childhood activities included outdoor activities and "he has continued to admire wildlife throughout his adult life."[13] He did not intend, nor should he be held responsible for, the vulnerability of this species, which is being caused by far greater forces such as industrial globalization and poaching from the local population. As the probation officer notes, "Franco appears to have committed the offense out of a genuine interest in reptiles and it does not appear he had any inclination to harm others."[14]

## B. Recommendation to the Court

Mr. Franco has suffered several consequences as a result of this case. He has been shamed and ostracized from the media attention. His dreams of becoming a sheriff are now gone. Mr. Franco has zero criminal history, with not so much as a traffic ticket on his record. He has a strong employment history, as evidence by Exhibit B, and was fired from his job at Ozzy's Automotive as a result of this offense. Surely these are punishments that can be considered under 18 U.S.C. Section 3553(a)(2)(A) and (B). He is extremely remorseful for his conduct, as further evidence by his letter to the Court. He has three young children who depend on him for support, and is starting a new family after getting remarried recently. Imprisonment is not the answer here. Mr. Franco respectfully requests a sentence of **five years' probation with a condition being 10 months of home arrest** in this case. He agrees to any reasonable restitution asked by the government in addition to that sentence.

//
//
//
//
//

---

[12] *See* Exhibit A, Mr. Franco's letter to the court.
[13] Disclosed Recommendation Letter, p. 5.
[14] *Id.*

4

1    If the Court does believe that some form of imprisonment is called for, Mr.

2    Franco asks the Court to consider a Residential Re-Entry Center and/or a self-surrender

3    date.

4

5                                                Respectfully submitted,

6                                                HILARY POTASHNER
                                                 Federal Public Defender
7

8    DATED:  January 17, 2018          By   /s/ STEPHEN D. DEMIK

9                                                STEPHEN D. DEMIK
                                                 Deputy Federal Public Defender
10                                               Attorney for RODRIGO FRANCO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                 5